Date signed September 12, 2006



PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

IN RE:                                    :
                                          :
HERMAN S. WOLK                            :        Case No. 05-17596PM
SANDRA G. WOLK                            :             Chapter 7
                                          :
                        Debtors           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - :

## MEMORANDUM OF DECISION

On August 17, 2006, the court heard the Motion of the United States Trustee to dismiss this bankruptcy case under chapter 7 filed by Herman S. Wolk and Sandra G. Wolk on April 1, 2005. The Motion was filed pursuant to § 707(b) of the Bankruptcy Code that provides:

**11 U.S.C. § 707. Dismissal**

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

Because this bankruptcy case was filed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the means testing apparatus of that legislation

has no application to this case. All debts scheduled are consumer debts. Because of the fact that Debtors' Amended Schedules show $428,105.79 owed to creditors holding unsecured, non-priority claims, Debtors are ineligible to file a bankruptcy case under chapter 13. Section 109(e) of the Bankruptcy Code imposes a ceiling of $307,675.00 for liquidated, unsecured, non-contingent debt in chapter 13 cases. The alternative for these Debtors is to file a case under chapter 11.

The following points are notable. In the Statement of Financial Affairs filed April 1, 2005, showing payments aggregating more than $600.00 to creditors within 90 days prior to the filing of the case, the amount stated was over $47,000.00. The Statement was amended on May 31, 2005, reducing this sum to $29,408.58. This Statement does not reflect those creditors to whom Debtors made payments aggregating less than $600.00. The source of funds for this reduction of debt was an annuity that was cashed in. Next, the Debtor Sandra G. Wolk, now 73 years of age, retired from her long-term employment at Holy Cross Hospital in October, 2005. The Debtor, Herman S. Wolk, now 75 years of age, retired in December, 2005, from a position with the United States Air Force Center for Air Force History that he had held since 1966. Mr. Wolk explained that, by virtue of this bankruptcy filing, he lost the security clearance required for the continuance of this work. None of the unsecured creditors filed a complaint under § 523(a)(2) of the Bankruptcy Code seeking a ruling that Debtors obtained credit by false pretenses, a false representation or actual fraud. This is extraordinary, considering the amount of unsecured consumer debt.

The rule of decision in this case is governed by the case of *Green v. Staples (In re Green)*, 934 F.2d 568, 572 (CA4 1991). *Green* instructs trial courts to consider the totality of the circumstances, with the debtor's ability to repay debt the primary factor for consideration. *See also, In re Kelly,* 841 F.2d 908, 913-914 (CA9 1988); *Shaw v. U.S. Bankruptcy Adm'r*, 310 B.R. 538, 542 (M.D.N.C. 2004); *In re Smurthwaite*, 149 B.R. 409, 410 (BC N.D.W.Va. 1992). At the time of the filing of this case, Debtors were employed, and they scheduled combined monthly income of $12,053.00 and expenses of $7,732.00. At the time of the hearing, the combined monthly expenses had decreased to $6,210.00 and the monthly income to $8,607.63. Debtors rent a townhouse and own a 2003 Ford Taurus. The court will review the *Green* factors separately.

**1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment.**  Considering their advanced ages, Debtors appear to be in good health and not suffering from any disability.  There was no sudden illness or other calamity that triggered this bankruptcy filing.

**2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay.**  This consideration involves what Albert Einstein described as "the miracle of compound interest."  In considering the claims filed, it appears that a very modest amount of the total represents consumer purchases in excess of Debtors' ability to repay.  For example, the Nordstrom claims go back to 1994 and 1998 and were presumably kept alive by virtue of Debtors continuing to pay interest.  This likewise appears to be the case as to the Wachovia claim that dates back to 1995.  Other retail accounts, including those accounts in the hands of assignees, have insufficient information and do not show the date of the last purchase. One American Express account shows charges of $836.26 for food, gasoline, and eyeglasses incurred shortly before the filing; another shows a payment of $250.00 and new activity of $184.77, representing a finance charge at the annual percentage rate of 27.49%.  A third account shows only a finance charge of $5.88; another shows recent activity in the form of a finance charge of $53.95 and a payment of $175.00, at the interest rate of 27.74%.  Lastly, another account shows activity of $211.20, $171.40 of which constitutes a finance charge and late payment fee. Thus, the court cannot pin the label on the Wolks that they are the sort of unscrupulous debtors seeking to gain the court's assistance in a scheme to take unfair advantage of their creditors as described in *Green*, 934 F.2d at 570.

As Mrs. Wolk explained, perhaps without the insight of Professor Einstein, they have been paying all they could on the accounts during the last 10 to 15 years, giving as much as they could every month.  Yet, they found themselves deeper and deeper in debt. The court finds that there were no cash advances involved, and the consumer purchases in and of themselves were not beyond their ability to repay their debts, but when superimposed upon the past credit card bills, the slightest credit incurred was far beyond their ability to repay the total sum due.

**3. Whether the debtor's proposed family budget is excessive or unreasonable.** Debtors' budget appears reasonable.  The court notes that the "spread" between income and expenses is diminished by virtue of the fact that there is no consideration of the income tax

-3-

payable by Mrs. Wolk upon her pension and social security income.  Debtors own one automobile, a 2003 Ford Taurus. The United States Trustee points out that they could live in a less desirable neighborhood and in smaller quarters than a 3-bedroom townhouse.

**4.  Whether debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition.**  The court finds that the Schedules and Statement of Current Income represent accurately their true financial condition.

**5.  Whether the petition was filed in good faith.**  Considering all of the circumstances and based in large part upon the court's observations of Debtors as they testified, and considering the fact that Debtors redeemed an annuity on the eve of bankruptcy in an effort to stave off the filing, as well as the fact that Debtors were faced, from time to time, with the embarrassment of returned checks because of the direct payments to creditors that they had authorized be made from their bank accounts, the court finds that this case was filed in good faith.

Having gone this far, the court finds that Debtors can propose a plan that will make some distribution to their creditors.  The court finds that the "considerable weight" given this factor alone, as mandated by *Green,* is sufficient to carry the day for the United States Trustee, although there is little else to support the motion for dismissal.

Where does that leave Debtors?  While the court agrees in principle with the proposition cited by the late Judge Howard Schwartzberg in the case of *In re Mastroeni*, 56 B.R. 456 (BC S.D.N.Y. 1985), the fact that Debtors do not qualify for relief under chapter 13 is not dispositive of whether the dismissal under § 707(b) of the Bankruptcy Code is appropriate.  *See In re Krohn*, 886 F.2d 123, 127 (CA6 1989); *In re Stratton*, 136 B.R. 804, 805 (BC C.D. Ill. 1991); *In re Lenartz*, 263 B R 331, 341 (BC Idaho 2001).  Debtors have the ability to propose a plan in a case filed under chapter 11, that will primarily benefit the Internal Revenue Service, the holder of a priority claim of $4,190.66, and Debtors' counsel.  The expense for counsel in such a case is substantial and unavoidable.  It is extremely difficult, if not impossible,  for individual debtors to proceed under chapter 11 without the benefit of experienced counsel.  Chapter 11 requires debtors to propose a plan and create a disclosure statement as well as meet all of the requirements of § 1129 of the Bankruptcy Code.  The court has no recollection of any case under chapter 11 being handled in proper person with a successful conclusion.

-4-

If Debtors are successful in obtaining confirmation of a plan under chapter 11 the ends of the United States Trustee would be met in that such a plan provides some compensation to their creditors who for several years have been perfectly willing to keep Debtors on the griddle, some at the modest interest rate of 27% per annum.  The court has some reservation as to whether a plan would be confirmed, because it has been the court's experience that the holders of credit card debt rarely vote in favor of a chapter 11 plan that pays them a fraction of their claims.  This scenario would leave Debtors in a situation where the case would then be reconverted to a case under chapter 7, leaving them somewhat poorer for the experience.  The United States Trustee argues out that the plan could be crammed down on the dissenting class.  Of course, in a case under chapter 11, Debtors would have an opportunity to file preference actions against creditors receiving payments from them in the 90 days prior to the filing of this bankruptcy case, so as to make a modest increase in the amount of the sums distributed.  Debtors might then be able to modify their Schedule of Exemptions to recover from the recovered proceeds the balance of the exemptions available to them.

The court will enter an order dismissing this case unless Debtors move in fifteen (15) days to convert this case to a case under chapter 11.

cc:     Herman/Sandra Wolk, 1139 Gaither Road, Rockville, MD 20850
        Jeffrey M. Orenstein, Esq., 15245 Shady Grove Road, Suite 465, Rockville, MD 20850
        Scott D. Field, Trustee, 11921 Rockville Pike, 3rd Floor, Rockville, MD 20852
        David I. Gold, 6305 Ivy Lane, Suite 600, Greenbelt, MD  20770

**End of Memorandum**